IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. RICHMOND, SR.,<br><br>          Plaintiff,<br><br>    v.<br><br>JAMES S. PRICE, et al.,<br><br>          Defendants. | C.A. No. 99-192 Erie<br>Judge McLaughlin |

### MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

#### I.   BACKGROUND

On June 9, 1999, Plaintiff Robert A. Richmond filed a Complaint under 42 U.S.C. § 1983 asserting that Defendants, Corrections Officers Wilkes, McElravy, and Bedilion, had violated his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution. Specifically, Plaintiff asserted that he suffered severe injuries to his hands and arms when the Defendants repeatedly struck them with the food slot door on Plaintiff's prison cell.

The jury trial of this action commenced on March 13, 2006. On March 15, 2006, the trial concluded with a special verdict. The jury answered "no" to three interrogatories asking whether Plaintiff had established "his Eighth Amendment right to be free from excessive force was violated" by each of the three individual defendants. On March 15, 2006, judgment was entered for Defendants on the special verdict.

On March 28, 2006, Plaintiff filed a motion for new trial. In his motion, Plaintiff contends that the verdict at trial was against the weight of the evidence, that the Court erred in various evidentiary rulings, that the special interrogatories given to the jury contained legal error, that the Court erred in failing to appoint counsel, and that defense counsel's closing argument contained

improper remarks that were prejudicial to Plaintiff. On May 1, 2006, Defendants filed a brief in opposition. This matter is ripe for review.

**II.     STANDARD FOR REVIEW**

Federal Rule of Civil Procedure 59(a) governs a motion for a new trial. According to Rule 59(a), a court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a)(1). "A new trial may be granted where 'the verdict is contrary to the great weight of the evidence.'" Wilson v. Phila. Det. Ctr., 986 F.Supp. 282, 287 (E.D.Pa.1997) (quoting Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3rd Cir.1988)). New trials may also be directed when the "conduct of counsel or the court has tainted the verdict." Kiss v. K-mart Corp., 2001 WL 568974, at *1 (E.D. Pa. May 22, 2001) (citation omitted).

Generally, the decision whether or not to grant a new trial "is committed to the sound discretion of the district court." Bonjorno v. Kaiser Aluminum & Chem. Corp., 752 F.2d 802, 812 (3rd Cir.1984). The court's latitude varies, however, depending on the type of error alleged. Klein v. Hollings, 992 F.2d 1285, 1289-90 (3rd Cir.1993). Its latitude "is broad when the reason for interfering with the jury verdict is a ruling on a matter that initially rested within the discretion of the court," such as evidentiary rulings. Id. The court's discretion is more limited when granting a new trial on the basis that the jury's verdict is against the weight of the evidence; in such cases a new trial should be awarded "only when the record shows that the jury's verdict resulted in a miscarriage of justice or when the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3rd Cir.1991). Moussa v. Commonwealth of Pennsylvania Dept. of Public Welfare, 89 F.Supp.2d 639, 648 (W.D. Pa. 2003).

In determining that the verdict is against the weight of the evidence, a different standard of review is applied from that which is applied in deciding a motion for judgment as a matter of law.

A judge must "evaluate all significant evidence, deciding in the exercise of his own best judgment whether the jury has so disregarded the clear weight of the credible evidence that a new trial is necessary to prevent injustice." Berndt v. Kaiser Aluminum & Chemical Sales, Inc., 789 F.2d 253, 258 (3rd Cir.1986) (citing Zegan v. Central Railroad Company of New Jersey, 266 F.2d 101 (3rd Cir.1959)). However, a court may not substitute its judgment for that of the jury. A new trial "cannot be granted ... merely because the court would have weighed the evidence differently and reached a different conclusion." Markovich v. Bell Helicopter Textron, Inc., 805 F.Supp. 1231, 1235 (E.D. Pa.), *aff'd*, 977 F.2d 568 (3rd Cir.1992).

In reviewing a challenge to a jury charge or interrogatories, the relevant inquiry is whether the charge taken as a whole accurately instructed the jury on the applicable law. Colegrove v. Cameron Machine Co., 172 F.Supp.2d 611, 634 (W.D. Pa. 2001). "A trial judge is not required to adopt the exact wording of a point for charge submitted by counsel." Posttape Associates v. Eastman Kodak Co., 537 F.2d 751, 757 (3rd Cir.1976); see also James v. Continental Insurance Co., 424 F.2d 1064 (3rd Cir.1970). Where the challenged portion of the charge was not objected to during trial, the challenging party must demonstrate "plain error in the [interrogatories] affecting [their] substantial rights." Fed. R. Civ. P. 51(d). The plain error doctrine is to be used sparingly and is applied only where (1) an error is committed in the jury instructions or interrogatories, (2) the error is plain or fundamental, and (3) the error was highly prejudicial or resulted in manifest injustice. See, e.g., Simmons v. City of Philadelphia, 947 F.2d 1042, 1078 (3rd Cir. 1991).

A new trial may also be ordered when counsel has used improper remarks in a closing argument. Where a party requests a new trial based on an allegation of improper remarks by counsel, the test is "whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements." Waldorf v. Shuta, 142 F.3d 601, 628 (3rd Cir.1998) (citations and internal quotations omitted). Although different standards may apply depending upon the reasons advanced for the new trial, "[t]he decision to grant or deny a motion for a new trial 'is

confided almost entirely to the discretion of the district court.'" Wilson, 986 F. Supp. at 287 (quoting Blancha v. Raymark Indus., 972 F.2d 507, 512 (3rd Cir.1992)).

### III. ANALYSIS

#### A. Weight of the Evidence

The standard for granting a new trial based on the weight of the evidence is extremely stringent so as "to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury,'" usurping the function of the jury as the finder of facts. Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1076 (3rd Cir. 1996). Thus, where there is a rational basis to support the verdict, a new trial should not be granted. Delli Santi v. CNA Insurance Companies, 88 F.3d 192, 202 (3rd Cir. 1996).

In order to prevail at trial, the Plaintiff had the burden of proving that the Defendants deprived him of his right to be free from cruel and unusual punishment and that this failure caused Plaintiff to suffer injury. (Tr., Day 2, pp. 109-10). The jury was instructed that, in the "excessive force" context, the central question is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." (Id. at 109). Contrary to the jury's verdict, Plaintiff contends that the great weight of the evidence supports a finding that the Defendants applied force maliciously in an attempt to intentionally cause injury to Plaintiff.

At trial, Plaintiff articulated his version of the events of February 28, 1999. Plaintiff testified that, while evening meals were being distributed in his cell block, he requested to speak to an officer. (Tr., Day 2, p. 19). Plaintiff explained that each cell door has a food slot built into it, with a swinging "wicket" door to allow corrections officers to pass meal trays into the cells. Plaintiff testified that, while he was kneeling on the floor in front of his door, resting his arm and hand on the food slot, and waiting to speak to a senior officer, Officer Wilkes ran up to his cell door and, with no provocation, grabbed the wicket and repeatedly slammed it down on Plaintiff's right arm, smashing it in between the wicket and the slot. (Id.). Plaintiff further testified that Officer McElravy

and Officer Bedilion joined Officer Wilkes in striking his arm with the food slot door. (Id.) Plaintiff could not recall how long this lasted but, during cross-examination, asserted that the officers slammed the wicket onto his arm 25 to 30 times. (Id. at 48). Plaintiff opined that the officers committed the assault in order to get back at Plaintiff for asking to speak to an officer about the food service. (Id.)

Plaintiff, during his testimony, denied making any "disturbance" or commotion prior to the incident. However, on cross-examination, Defendants introduced into evidence a grievance form written by Plaintiff wherein he described pouring his Kool-Aid onto the floor and dropping his meal tray onto the floor outside his cell while waiting for the officer to come speak with him. (Tr., Day 2, p. 50; Defense Exhibit A, Inmate Grievance). Plaintiff admitted to these actions, but characterized them as "protests", rather than "disturbances." (Id. at 50).

Bruce Ferrell, an inmate housed in the same cell block as Plaintiff, testified that, on the date of the incident, he heard a commotion in the cell block and moved to his door to see what was going on. (Tr., Day 1, pp. 72-74). Ferrell described watching several officers close the wicket door onto Plaintiff's arm five or six times and offered his opinion that the officers' actions appeared to be designed to inflict harm. (Id. at 73, 77).

Christopher Kaminski, another inmate, testified that he observed Officers Wilkes and McElravy pressing the wicket door down on Plaintiff's arm during the February 28, 1999 incident. (Tr., Day 2, pp. 70-74). Kaminsky recounted that Officer Wilkes had asked Plaintiff to place his hands inside his cell, and that, when Plaintiff failed to do so, the officers applied pressure to Plaintiff's arm. (Id. at 70-71). Kaminsky testified that Officer Bedilion did not take part in pressing the wicket down on Plaintiff's arms, instead remaining nearby with the cell door keys so that he could quickly lock the food slot once Plaintiff's arms were inside. (Id.)

In contrast to Plaintiff's version of the February 28, 1999 incident, each of the Defendants testified that the use of force directed at Plaintiff was intended simply to maintain order and prevent a disturbance. Officer McElravy testified he and Officer Wilkes were handing out food trays when

Plaintiff began to complain about wanting more soup. (Tr., Day 1, p. 85). McElravy then overheard Officer Wilkes ordering Plaintiff to place his hands inside the food slot. (Id.) Plaintiff responded, according to McElravy, by throwing his food tray and juice at the two officers and then reaching out and grabbing Officer Wilkes by the forearms. (Id.)

Officer McElravy testified that he ordered Plaintiff to release his grip on Officer Wilkes and that, when Plaintiff failed to comply, McElravy used a controlling technique to attempt to release Plaintiff's grip on Officer Wilkes and force his hands back inside of the cell so that the food slot wicket could be secured. (Id. at 91). McElravy testified that Plaintiff sustained his injuries by continuing his attempts to grab Officer Wilkes while the officers were attempting to shut and secure the wicket door. (Id. at 93-95). McElravy denied ever using the wicket to strike Plaintiff's forearms and hands. (Id. at 94; 101).

Officer Wilkes testified that, on the date of the incident, Plaintiff reached through the food slot and grabbed his forearm with enough pressure to prevent Wilkes from pulling free. (Tr., Day 1, p. 113-14; 124). Wilkes stated that, in order to free his hands from Plaintiff's grip, he applied pressure on the wicket door against Plaintiff's arms in order to force Plaintiff to withdraw his hands and allow the officers to secure the wicket. (Id.) Wilkes asserted that Plaintiff, throughout the entire attempt to secure the wicket door, continued thrusting his arms outside of his cell and attempting to clutch at the officers. (Id. at 114; 118-119). Wilkes denied ever using the wicket to strike Plaintiff's forearms and hands. (Tr., Day 2, p. 88).

Officer Bedilion testified that he witnessed the struggle in front of Plaintiff's cell from his station on a lower tier of the cell block and responded by giving verbal commands to Plaintiff to release Officer Wilkes, and then by applying pressure to Plaintiff's hands to force him to release Officer Wilkes. (Tr., Day 2, p. 4). Bedilion further testified that, once Plaintiff's hands were finally inside of his cell, he was able to secure the wicket door. (Id. at 6). Officer Bedilion denied ever using the wicket to strike Plaintiff's forearms and hands, and testified that, due to the confusion of

the incident and his close proximity to the cell, he could not tell whether Officer Wilkes and Officer McElravy applied pressure to the wicket door at any point. (Id. at 7).

In light of the foregoing testimony, we find that there clearly existed "a rational basis to support the verdict" as delivered by the jury. See Delli Santi, 88 F.3d at 202. It was the province of the jury to evaluate Plaintiff's testimony as well as that of the Defendants and determine whether each was worthy of belief. The three corrections officers consistently testified that the injuries sustained by Plaintiff from the wicket door were the result of his refusal to release Officer Wilkes and withdraw his hands from outside of the cell. Plaintiff's witness, Christopher Kaminsky, partially corroborated their story by testifying that the officers had ordered Plaintiff to remove his hands from the food slot before applying pressure with the wicket. Indeed, only Plaintiff and inmate Bruce Ferrell offered testimony that the officers had used the wicket door to strike Plaintiff's arms, and they differed markedly as to how many times they claimed to have seen the wicket strike Plaintiff.

The resolution of this case turned entirely upon which version of the incident the jury found more credible. Here, we do not find that the "the jury's verdict resulted in a miscarriage of justice" or "cries out to be overturned or shocks our conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3rd Cir. 1991). Evaluations of witness credibility are the fundamental province of the jury. In such situations, a court may not substitute its judgment for that of the jury because to do so would "effect[] a denigration of the jury system and . . . usurp . . .the prime function of the jury as the trier of facts." Lind v. Schenley Indus. Inc., 278 F.2d 79, 90 (3rd Cir.) (en banc), *cert. denied*, 364 U.S. 835 (1960).

### B. Alleged Errors in Evidentiary Rulings

Plaintiff raises various evidentiary challenges, first arguing that this Court erred in our ruling on a document that Plaintiff submitted to the Court prior to trial styled as "Plaintiff's Stipulation of Facts." (Dkt. No. 145). Plaintiff filed this document, containing factual allegations

and conclusions, pursuant to Local Rule 7.2 of the U.S. District Court for the Western District of Pennsylvania:

> Counsel may file a stipulation once, without approval of the court, extending the due date for the filing of an answer, or motion, for a period not exceeding 45 days from the due date.

Plaintiff appears to have read this rule, which is designed to allow a party to extend the time period for the filing of an answer or motion without leave of Court, to operate as a procedure for filing a request for admissions. Accordingly, when Defendant's failed to respond to Plaintiff's stipulation, Plaintiff argued, during a pretrial conference, that those "stipulations" should be deemed admitted. The local rule in question, however, simply has nothing to do with admissions.

Plaintiff also argues that we committed error in allowing misconduct report A149874 to be admitted into evidence. The document in question was a misconduct report drafted by Defendant Wilkes recounting the February 28, 1999 incident. Plaintiff asserts that the report does not satisfy the "business records" exception to the hearsay rule under F.R.E. 803(6). However, the misconduct report is not inadmissible as hearsay in the first place, as it was drafted by a declarant subject to cross-examination at trial. See F.R.E. 801. Moreover, Plaintiff admits to using the report during his case in chief. (Motion for New Trial, p. 11).

Plaintiff next argues that one of his witnesses, fellow inmate Christopher Kaminski, suffered harassment from prison officials for his decision to testify on behalf of Plaintiff. At trial, Plaintiff sought to submit a copy of a complaint filed by Kaminski in 2003 recounting the alleged mistreatment. This Court sustained an objection to the complaint and barred Plaintiff from utilizing it. We find that the complaint, even if the allegations contained therein were true, offers nothing to warrant a new trial. Inmate Kaminsky offered his testimony at trial, indicating that he was not deterred by the alleged harassment.

Finally, Plaintiff argues that he was not given adequate time to use the law library in prison or to confer with witnesses. "Denial of access to a prison law library is actionable as a constitutional violation only insofar as the denial impedes a prisoner's constitutional right of access to the courts."

Picquin-George v. Warden, FCI - Schuylkill, 2006 WL 2917552 (3rd Cir. 2006). To prevail, a plaintiff must demonstrate "how the alleged inadequacies have impeded his ability to bring or prosecute a claim." See Tourscher v. McCullough, 184 F.3d 236, 242 (3rd Cir.1999) (affirming dismissal of right of access claim because prisoner failed to describe how prison workload prevented him from pursuing his appeal); Reynolds v. Wagner, 128 F.3d 166, 182-83 (3rd Cir.1997) (affirming dismissal of right of access claim because plaintiffs failed to allege actual injury derived from challenged prison policy). Plaintiff does not address any injury or shortcoming in his case that stemmed from the alleged denial of access to legal materials. Moreover, when informed of Plaintiff's desire to confer with his witnesses prior to presentation of their testimony, this Court allowed Plaintiff time to do so at the courthouse.

### C. Alleged Plain Error in Interrogatories

Plaintiff asserts that "the special interrogatories submitted to the jury inaccurately framed the issues to be resolved." (Motion for New Trial, p. 13). During the charge conference that took place during the final day of trial, Plaintiff failed to object to the interrogatories. Thus, in order to obtain a new trial on the basis of the interrogatories, Plaintiffs must demonstrate "plain error in the [interrogatories] affecting [their] substantial rights." Fed. R. Civ. P. 51(d). The plain error doctrine is to be used sparingly in situations where the error is plain and resulted in manifest injustice. Simmons v. City of Philadelphia, 947 F.2d 1042, 1078 (3rd Cir. 1991).

The first, second and third special interrogatories to the jury queried as follows:

1. Do you find by a preponderance of the evidence that Plaintiff has proven that his Eighth Amendment right to be free from excessive force was violated on February 28, 1999, by Corrections Officer Wilkes?

2. Do you find by a preponderance of the evidence that Plaintiff has proven that his Eighth Amendment right to be free from excessive force was violated on February 28, 1999, by Corrections Officer McElravy?

3. Do you find by a preponderance of the evidence that Plaintiff has proven that his Eighth Amendment right to be

> free from excessive force was violated on February 28,
> 1999, by Corrections Officer Bedilion?

(Tr., Day 3, p. 3-4). Plaintiff asserts that these interrogatories were "too vague and thereby misled the jury." (Motion for New Trial, p. 13). Reviewing for plain error, we find that these interrogatories accurately recount the incident, the substantive nature of the claim, the burden and level of proof, and the Defendant accused.

Plaintiff also contends that the Court erred in failing to provide an interrogatory asking specifically whether the Defendant's conduct proximately caused the injuries to his hand. However, there was no need for a separate interrogatory on proximate cause because the jury was adequately instructed on causation as an element of an excessive force case in the jury instructions.

Finally, Plaintiff argues that the Court erred in failing to provide an instruction on nominal damages. However, Plaintiff did not object during the charge conference when the Court removed the nominal damages instruction from the charge. (Tr., Day 2, pp. 90-99). Moreover, an instruction that the jury could award damages based upon a violation of an abstract constitutional right without accompanying physical injury would not have been supported by Plaintiff's own arguments and evidence at trial, where he vigorously argued that his injuries were severe and permanent.

### D.   Improper Remarks by Counsel During Closing

Plaintiff asserts that defense counsel, during closing arguments, utilized prejudicial statements and claims unsupported by the evidence to prejudice the jury into finding for the Defendants. Specifically, Plaintiffs assert that defense counsel "overemphasized the number of blows inflicted upon plaintiff during the excessive force incident." (Plaintiff's Motion to Amend, Dkt. No. 166, p. 2).

In reviewing allegedly improper remarks by counsel that have been objected to, the appropriate query consists of whether (1) the remarks were improper, and (2) the improper remarks made it reasonably probably that the verdict was influenced by the prejudice resulting from the

remarks. Forrest v. Beloit Corp., 424 F.3d 344, 351 (3rd Cir. 2005). Plaintiff, however, failed to object at trial to any portion of Defendants' closing statements. "[F]ailure to object precludes [a party] from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks." Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3rd Cir. 1979); see also Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 848 F.2d 613, 619 (5th Cir. 1988) (finding that, although comments by counsel during closing argument were inappropriate and prejudicial, the failure to object to those remarks at trial waived the right to raise them at a subsequent time).

After a careful review of the closing arguments in this case and the specific portion referenced by Plaintiff, we conclude that the remarks here fail to approach the level of prejudice required for a new trial. The factual issues in this case, including the number of blows inflicted upon plaintiff during the incident, were hotly joined. The remarks of counsel at closing did not breach any rules of professional responsibility or prejudice the jury's verdict. Court's have uniformly required misconduct by counsel to be extremely pervasive and egregious before a new trial will be granted. See, e.g., Blanch Road Corp. v. Bensalem Township, 57 F.3d 253, 264 (3rd Cir. 1995) (granting new trial where "counsel for Plaintiffs pursued a pattern of misconduct from opening statement through final argument"); Fineman v. Armstrong World Industries, 980 F.2d 171, 206-07 (3rd Cir 1992) (affirming grant of new trial where counsel's remarks were pervasive and noting that "a combination of improper remarks are required to persuade us of prejudicial impact"); Draper v. Airco, Inc., 580 F.2d 91, 96-97 (3rd Cir. 1978) (concluding that a verdict had likely been prejudiced by prejudicial statements where the closing contained "numerous and serious violations of . . . many rules of proper argument"). The conduct alleged here simply does not rise to that level.

### E.     Failure to Appoint Counsel

"Indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." Montgomery v. Pinchaly, 294 F.3d 492, 498 (3rd Cir. 2002). In order to determine whether the appointment of counsel is appropriate, a court considers several factors, including: (1) plaintiff's

11

ability to present his own case; (2) the complexity of the legal issue; (3) the degree to which a factual investigation is needed; (4) credibility determinations; (5) expert witnesses; and (6) whether plaintiff can attain and afford counsel. See Parham v. Johnson, 126 F.3d 454, 457 (3rd Cir. 1997); Tabron v. Grace, 6 F.3d 147, 155 (3rd Cir. 1993).

While credibility determinations were central to the jury's resolution of this case, this is the only factor which cuts in Plaintiff's favor. Plaintiff aptly demonstrated his ability to present his case by filing the action, filing an appeal of this Court's initial dismissal of the case, prevailing upon appeal, and presenting his case at trial in a coherent and thorough fashion. No expert witnesses were utilized or required in this case, and a prolonged factual investigation was not necessary because each of the parties was present during the incident. Moreover, the lone claim presented at trial - that of excessive force - did not present any significant legal complexities leading up to and during trial.

Indeed, the Third Circuit addressed Plaintiff's right to counsel on his prior appeal and determined that we did not abuse our discretion in denying Plaintiff's request:

> We likewise find no abuse of discretion on the part of the District Court in denying Richmond's requests for the appointment of counsel.

See Richmond v. Price, No. 01-1284, Opinion dated June 12, 2003, p. 7, n.1 (3rd Cir. 2003).

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for a new trial is denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT A. RICHMOND, SR., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAMES S. PRICE, et al., )<br>)<br>)<br>Defendants. ) | C.A. No. 99-192 Erie<br>District Judge McLaughlin |

**ORDER**

AND NOW, this 18th day of December, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for New Trial filed by Plaintiff Robert A. Richmond is DENIED.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___